# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF INDIANA

Karan Gill, Hye Yoon and Crystal
Nassouri

      Plaintiffs,

      Vs.

LVI Global, LLC, d/b/a Las Vegas
Institute, Steve Galella, D.D.S.,
OrthoMatrix Corp., Inc., also d/b/a
Facial Beauty Institute, and John's
Dental Laboratory, Inc.

      Defendants.

CASE NO:   2:21-CV-338

## PLAINTIFFS' COMPLAINT

Plaintiffs Karan Gill, Hye Yoon and Crystal Nassouri, by and through their undersigned counsel, by way of Complaint against LVI Global, LLC d/b/a Las Vegas Institute ("LVI"), John's Dental Laboratory, Inc. ("John's Dental"), Steve Gallella, D.D.S., and OrthoMatrix Corp, Inc., also d/b/a as Facial Beauty Institute ("FBI"), hereby allege as follows:

## PARTIES

1.    Plaintiff Karan Gill is an individual and citizen of Canada, with an address at 75 Crafter Crescent, Hamilton, Ontario, Canada L8J 0J2. His claims arise from the laws of Indiana and Ontario, Canada.

2.    Plaintiff Hye Yoon, a/k/a Erika Yoon, is an individual and citizen of North Carolina with an address at 5120 Alston Glen Drive, Apt. 157, Cary, North Carolina 27519. She was previously a citizen of California. Her claims arise from the laws of Indiana and California.

2828751.1

3.     Plaintiff Crystal Nassouri, is an individual and citizen of Michigan with an address at 1408 Rossdale Drive, Waterford, Michigan 48328. Her claims arise from the laws of Indiana and Michigan.

4.     At all times relevant, defendant LVI was a Nevada limited liability company and a citizen of Nevada with a principal place of business located at 1401 Hillshire Dr. in Las Vegas, Nevada 89134.

5.     At all times relevant, defendant John's Dental was an Indiana Corporation and citizen of Indiana with a principal place of business at 423 South 13th Street in Terre Haute, Indiana, 47807.

6.     At all relevant times, defendant Dr. Steve Galella, D.D.S. ("Dr. Galella) was an individual and a citizen of Tennessee residing at 997 Eastwood Terrace, Collierville, Tennessee 38017.

7.     At all relevant times, defendant OrthoMatrix Corp., Inc. ("OrthoMatrix"), d/b/a as Facial Beauty Institute ("FBI") and d/b/a as OrthoLogic, was a foreign corporation organized under the laws of the State of Tennessee, and a citizen of Tennessee, with a principal place of business at 875 West Poplar Avenue, Suite 16, Collierville, Tennessee 38017. FBI is a wholly owned division and/or tradename of defendant OrthoMatrix.

## PERSONAL JURISDICTION

8.     This Court's jurisdiction is based upon diversity of citizenship as set forth in 28 U.S.C. Section 1332 in that all of the plaintiffs are citizens of different states than each of the defendants.

9.     The amount in controversy is in excess of Seventy-Five Thousand Dollars ($75,000.00) per plaintiff.

10.    Pursuant to 28 U.S.C. 1391, venue is properly laid in this district because a

2828751.1

substantial part of the transactions and issues giving rise to plaintiffs' claims occurred in this judicial district.

11.     This Court has personal jurisdiction over John's Dental because John's Dental is an Indiana Corporation.

12.     This Court has personal jurisdiction over the remaining defendants because they regularly conducted business in Indiana with specific connection to the manufacturing, marketing and sale of the device at issue in this complaint and the claims of plaintiffs.

## VENUE

13.     Venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in Indiana and because John's Dental is an Indiana entity with a principal place of business in Terre Haute, Indiana.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS
## NATURE OF THE ACTION

14.     This is an action for money damages for personal injury suffered by the plaintiffs as the result of the installation of a dental appliance which defendants designed, manufactured and marketed despite no scientific or clinical basis to prove it was either safe or effective.

15.     The appliance, known as an "Anterior Growth Guidance Appliance" ("AGGA") was manufactured, designed, and marketed as a proven means of correcting dental, facial and airway abnormalities in lieu of complex jaw surgery.

16.     Defendants promoted AGGA, taught dentists how it allegedly functioned, and prepared AGGA treatment plans for dentists, claiming that AGGA causes three-dimensional changes in the nasomaxillary complex of adults, including growing/advancing/remodeling the maxilla to move forward horizontally over time by as much or more than 10 mm, through a

2828751.1

process of mechanical force and new bone deposition resulting from stimulation of a nerve in the palate, and that it was a reasonable alternative to jaw surgery.

17.     Plaintiffs allege that these claims are false, and are contrary to medical science; that instead AGGA works to push the upper teeth out of their housing in the alveolar bone, that it causes no new bone growth, that it is not a reasonable alternative to jaw surgery, and that it presents a risk of serious and permanent harm.

18.     As a result of the fact that AGGA as negligently designed and manufactured was not reasonably safe and was unreasonably dangerous, the promotion and teaching of AGGA involving false representations to dentists including plaintiffs' dentists, the creation of a treatment plan utilizing a product that is unreasonably dangerous, the failure to warn plaintiffs and/or their dentists about the actual risks of AGGA, and the installation of AGGA in plaintiffs have caused plaintiffs to sustain significant and permanent damage to their teeth and face, economic loss, disfigurement, embarrassment, loss of enjoyment of life, and physical and mental pain and suffering.

## FACTS ALLEGED
## HISTORY OF AGGA

19.     At all times relevant to the case, Dr. Galella was a general dentist duly licensed by the State of Tennessee and a diplomate of an organization called the International Board of Orthodontics.

20.     Prior to January 2018, Dr. Galella designed the dental appliances called AGGA and the Controlled Arch system of brackets and wires ("CAB").

21.     Prior to 2010, Dr. Galella founded FBI, and at all times relevant to the Complaint Dr. Galella and FBI shared office space in Tennessee, along with OrthoMatrix.

22.     Prior to 2010, FBI became an unincorporated division and/or trade name of OrthoMatrix.

23.     At all times relevant to the Complaint, LVI claimed to be "an international institution dedicated to the progress of the dental profession through the integration of comprehensive diagnosis, contemporary techniques and technology."

24.     At all times relevant to the Complaint, LVI further claimed that the "continuing education offered at LVI is designed to improve the lives of patients and enhance professional satisfaction."

25.     At all times relevant to the Complaint, Dr. Galella was an officer of, employed by and working in furtherance of the business of, and/or acted as agent of, FBI and, therefore of OrthoMatrix.

26.     At all times relevant to the Complaint, LVI, OrthoMatrix, through its division FBI, and Dr. Galella, offered and taught courses to dentists on the use and alleged safety and efficacy of AGGA and CAB.

27.     At all times relevant to the Complaint, OrthoMatrix claimed to be, *inter alia*, a research organization conducting research in various fields including biological mechanisms that cause craniofacial growth in adults.

28.     At all times relevant to the Complaint, OrthoMatrix, through its unincorporated division or trade name FBI and/or through another unincorporated division or tradename of OrthoMatrix called OrthoLogic, maintained a program that purported to analyze patients' dental/cranio maxillofacial condition using "radiologists" and "experts" to determine whether said patients were appropriate candidates for AGGA/CAB treatment, and prepare AGGA and

CAB treatment plans for such patients with comprehensive instructions that were alleged to be specific and customized for each patient ("the program").

29.     Prior to 2010 and at all times relevant to the Complaint, Dr. Galella, LVI, and OrthoMatrix made certain representations ("the representations") to dentists throughout the world, including the dentists who treated the plaintiffs, that:

a.     AGGA is a device that causes three-dimensional changes in the nasomaxillary complex of adults, including growing/advancing/remodeling the maxilla to move forward horizontally over time by as much or more than 10 mm;

b.     AGGA causes these nasomaxillary changes in adults through a process of mechanical force and new bone deposition resulting from stimulation of a nerve in the palate;

c.     as the maxilla moves forward, upper teeth move with it;

d.     by adhering bite plates to the lower molars, the lower jaw moves forward as the upper jaw moves forward;

e.     the movement of the jaws has the effect of opening the airway, and moving the jaws into a position more natural for the user's face;

f.     AGGA is reasonably safe for installation into dental patients' mouths;

g.     AGGA can be utilized as a substitute for jaw surgery.

30.     Prior to 2010 and at all times relevant to the Complaint, Dr. Galella, LVI, and OrthoMatrix, made additional representations to dentist throughout the world, including to dentists treating plaintiffs, that, once AGGA causes the desired maxilla and mandible position to be obtained, and AGGA was then removed, CAB could be used to make relatively minor

adjustments in order to guide all teeth to their proper positions, as well as to widen the dental arches.

31.     The representations, made prior to 2010 and at all times relevant to the Complaint by  Dr. Galella, LVI, and OrthoMatrix, were made for the purpose of, *inter alia*, causing dentists to promote AGGA and CAB to consumers.

32.     Neither AGGA nor CAB have ever been submitted to the Federal Drug Administration, or any other government agency, for approval, and they have never been approved by any governmental agency for use in the United States.

33.     Dr. Galella, LVI, and OrthoMatrix, knew or should have known that the representations were unproven, not supported by medical knowledge or science, and were false and materially misleading, and that:

        a.     AGGA is not a device that can cause changes in the nasomaxillary complex of adults;

        b.     AGGA is not a device that mechanically causes the maxilla of an adult to move forward horizontally over time as much or more than 10 mm;

        c.     AGGA does not stimulate new bone growth resulting in changes to the nasomaxillary complex of an adult;

        d.     AGGA does not move the maxilla; instead, it pushes certain of the upper teeth forward over time within the alveolar bone which is attached to the maxilla;

        e.     as AGGA pushes the upper teeth forward, the teeth are pushed out of their proper position within the alveolar bone, causing the teeth to flare out, damaging the roots of the teeth and gums, and causing damage to and loss of alveolar bone that holds the teeth;

     f.      AGGA does not open a user's airway;

     g.      AGGA is unreasonably dangerous to patients in whom it is installed, and is not reasonably safe for use by such patients; and,

     h.      AGGA is not a substitute for jaw surgery.

34.    At all times relevant to the Complaint, John's Dental was in the business of, *inter alia*, manufacturing, selling and putting into the stream of commerce, dental appliances including but not limited to AGGA and CAB, and was bound to anticipate that their products would be, through dental professionals, presented to the general public for their use, including but not limited to use by consumers within each state of the United States, as well as the province of Ontario, Canada.

35.    At all times relevant to the Complaint, John's Dental paid a royalty and/or other fee to both OrthoMatrix and to Galella, or an entity controlled by Galella, for every AGGA device manufactured and sold by John's Dental.

## PLAINTIFF KARAN GILL

36.    Prior to Spring 2018, dentist Dr. Michael Robinson ("Dr. Robinson") of Ontario, Canada, took a course in the use, safety and efficacy of AGGA through FBI, which course ("FBI course") was taught by defendant Galella, as well as a similar course on the campus of LVI in Las Vegas, Nevada ("the LVI course").

37.    On information and belief, Dr. Robinson paid LVI for the LVI course, and the course was approved by LVI and taught by an LVI-approved instructor.

38.    On information and belief, Dr. Robinson paid FBI for the FBI course.

39.    During the teaching of the LVI course, the agent, servant or employee of LVI who taught it made various representations about the safety and efficacy of AGGA.

40.     During the teaching of the FBI course, Galella made various representations about the safety and efficacy of AGGA.

41.     Defendant Galella, individually and as an agent, servant or employee of FBI, and the agent, servant or employee of LVI who taught the LVI course, during the teaching of the FBI course and the LVI course respectively, made various representations about the safety and efficacy of AGGA, which representations included those set forth above and which were unproven, not supported by medical knowledge or science, untested by any clinical trial, unsupported by peer-reviewed literature, and which were false and materially misleading.

42.     On information and belief, the FBI course and/or the LVI course largely or completely comprised the extent of Dr. Robinson's training concerning AGGA and CAB.

43.     Prior to Spring 2018, Mr. Gill sought treatment from Dr. Robinson for a condition which, inter alia, was described as underbite, and Dr. Robinson prescribed treatment with an AGGA device for the purpose of moving his jaw and alleviating his symptoms.

44.     At no time did FBI or Galella or LVI ever warn Dr. Robinson or Mr. Gill that AGGA was unproven, was not supported by scientific or medical knowledge, was not reasonably safe, was unreasonably dangerous, was not efficacious, and presented a risk of serious and permanent injury to consumers.

45.     Prior to Spring 2018, Dr. Robinson consulted with OrthoMatrix, through Dr. Galella and others, in regard to whether Mr. Gill was an appropriate candidate for AGGA and CAB, and for the purpose of establishing an AGGA and CAB treatment plan.

46.     More specifically, prior to Spring 2018, on information and belief, Dr. Robinson submitted a questionnaire and dental records concerning Mr. Gill to OrthoMatrix's Total Diagnostics internet portal, and thereafter and as a result, OrthoMatrix, through Dr. Galella and

others, produced an AGGA/CAB treatment plan for Mr. Gill ("the treatment plan") and otherwise represented to Dr. Robinson and to Mr. Gill that AGGA and CAB were appropriate treatments for Mr. Gill.

47.    Prior to Spring 2018, Dr. Robinson, on information and belief in reliance on advice, instruction and guidance provided by OrthoMatrix and Dr. Galella, submitted information and/or specifications to John's Dental concerning Mr. Gill and did place an order for an AGGA appliance to be manufactured by John's Dental for the specific use by Mr. Gill.

48.    Prior to Spring 2018, John's Dental did manufacture an AGGA appliance for use by Dr. Robinson for installation in Mr. Gill's mouth, did place it in the stream of commerce and did sell that appliance to Dr. Robinson, who was then within the Province of Ontario, Canada; John's Dental knew at the time it was placed into the stream of commerce that it would be installed in a member of the public, and specifically that Dr. Robinson would install it in Mr. Gill.

49.    At the time of sale of the AGGA to Dr. Robinson, John's Dental impliedly warranted and represented that the AGGA was fit, capable and suitable for the ordinary purposes for which it was intended, that it was fit for the specific purpose for which it was sold to Dr. Robinson, that it had no design defects, that it was of merchantable quality, and that it was safe and not unreasonably dangerous.

50.    Mr. Gill reasonably relied upon the implied warranties of John's Dental, as well as on its skill and judgment.

51.    Prior to the AGGA being placed into the stream of commerce and sold to Dr. Robinson for use on Mr. Gill, Dr. Galella did inspect and examine photographs of that AGGA device and of a mold of Mr. Gill's teeth, and pronounced the AGGA fit to be used.

52.     At the time of the sale of the AGGA to Dr. Robinson, the AGGA was inherently defective by virtue of its design, was not fit for its intended purpose nor for the specific purpose for which it was sold for installation in Mr. Gill's mouth; it was not of merchantable quality, was not reasonably safe, was unreasonably dangerous and defective, all at the time it left the possession, custody and control of John's Dental, for reasons that include but are not limited to:

      a.      AGGA as designed, manufactured and sold was not based on valid scientific principles, and in an adult does not change the nasomaxillary complex in three, or any, dimensions, does not stimulate new bone growth, does not move the maxilla forward horizontally by as much or more than 10 mm, does not open a user's airway, is in no way a substitute for jaw surgery;

      b.      there is no scientifically valid method of moving an adult maxilla forward more than a de minimis amount without jaw surgery, and there is no alternative design of AGGA or any of its components that could have over-ridden scientific principles of physiology and anatomy;

      c.      the design defect of the AGGA was not in any particular component part; but instead was that neither AGGA nor any appliance can possibly do what AGGA claims to have been designed to do;

      d.      that AGGA is unreasonably dangerous in that, rather than move the maxilla, it pushes the upper teeth forward and out of their proper position within the alveolar bone, causing the teeth to flare out, damaging the roots of the teeth and gums, and causing damage to and loss of alveolar bone that holds the teeth;

      e.      as AGGA creates substantial risk of harm, and no product can perform the function that it was designed to perform;

2828751.1

f.      John's Dental failed to warn Mr. Gill's dentist or anyone else of the defects, deficiencies and dangers of AGGA as set forth in subparts a-e above; and,

g.      At the time that John's Dental manufactured, placed into the stream of commerce and sold to Dr. Robinson the AGGA appliance for Mr. Gill, that appliance was not reasonably safe, was not minimally safe for its expected purpose, and was dangerous to the extent beyond which would be contemplated by the ordinary dentist or consumer who purchases or uses it, with the ordinary knowledge common to such dentists or users.

53.     At all times relevant to the Complaint, had Mr. Gill been warned of the defects and deficiencies of AGGA as described above, he would not have embarked on any course of treatment using AGGA.

54.     At all times relevant to the Complaint, had Dr. Robinson been warned by any of the defendants of the defects and deficiencies of AGGA as described above then, on information and belief, she would not have embarked on any course of treatment of Mr. Gill using AGGA.

55.     At all times relevant to the Complaint, Mr. Gill would not by exercise of ordinary and reasonable care have discovered the defects and deficiencies of AGGA as described above nor perceived its danger.

56.     By the Spring of 2019, Mr. Gill became aware that the AGGA device that had been installed in him was causing severe and permanent injury, and he had the device removed.

57.     At all times relevant to the Complaint,  Dr. Galella and OrthoMatrix, and LVI, engaged in consumer-related conduct that was materially misleading in that: 1) each of them made material misrepresentations to dentists through the course and other courses, and through website marketing to both dentists and consumers, to the effect that AGGA was safe and efficacious and was a reasonable and functionally effective alternative to jaw surgery that would

create more than de minimis movement of the human maxilla; 2) such material misrepresentations were made with the knowledge and expectation that those dentists would advertise and otherwise offer AGGA as a safe and efficacious treatment alternative to consumers, including but not limited to consumers in the Province of Ontario, Canada including Mr. Gill; and, 3) such material misrepresentations were made with the knowledge and expectation that members of the general public would ask dentists for AGGA and/or otherwise accept AGGA as a safe and efficacious treatment alternative to jaw surgery, consumers, including but not limited to consumers in the Province of Ontario, Canada including Mr. Gill.

58.     As a result of the installation and use of the AGGA appliances, Mr. Gill has been caused to suffer significant and permanent injury and damage, including but not limited to: loosened and damaged front teeth, sensitive premaxilla area unable to experience strong tongue pressure/posture without pain, gum recession in the premaxilla, and teeth sensitivity, likely increased impaction of wisdom teeth from molars being pushed back; pain; economic loss related to the cost of said worthless and harmful AGGA treatment; prolonged suffering from the conditions for which he originally sought treatment from Dr. Robinson as a result of being induced to avoid seeking proper treatment for it; and other injury and damage.

59.     Mr. Gill at all times relevant to the Complaint acted reasonably, and nothing he did or failed to do caused or contributed to cause his injuries.

## COUNT I:

### Product Liability-Negligence Against Defendant Dr. Galella

60.     Plaintiff Karan Gill reaffirms and realleges each of the above paragraphs of the Complaint as if specifically affirmed and alleged herein.

61.     Defendant Dr. Galella was negligent in that, *inter alia,* he:

2828751.1

a.      Negligently designed the AGGA devices that were installed in Mr. Gill,

when he knew or should have known that AGGA devices were unproven, were neither

safe nor efficacious, the principles upon which AGGA allegedly functioned were not

supported by and were in contravention of medical knowledge and science, it was

unreasonably dangerous and that it could and foreseeably would cause the type of injury

and damage suffered by Mr. Gill;

62.     Dr. Galella acted with reckless disregard for the safety of others, including Mr.

Gill.

63.     As a direct and proximate result of the negligence of Dr. Galella, and his reckless

disregard for the safety of others including Mr. Gill, Mr. Gill has been substantially and

permanently injured and damaged as outlined above.

**WHEREFORE**, plaintiff Karan Gill demands Judgment in an amount in excess of One

Hundred Thousand Dollars ($100,000.00) against defendant Dr. Steve Galella, D.D.S., plus

interest and costs.

## COUNT II:

### Negligence Against Defendant LVI

64.     Plaintiff Karan Gill reaffirms and realleges each of the above paragraphs of the

Complaint as if specifically affirmed and alleged herein.

65.     Defendant LVI was negligent in that, *inter alia,* it:

a.      negligently taught or caused to be taught the course to Mr. Gill's dentist,

informing him and others that the AGGA device was safe and efficacious when it knew

or should have known that the device was unproven, it was neither safe nor efficacious,

the principles upon which it allegedly functioned were not supported by and were in

contravention of medical knowledge and science, it was unreasonably dangerous and that it could and foreseeably would cause the type of injury and damage suffered by Mr. Gill;

      b.     negligently marketed AGGA to Mr. Gill and to dentists and consumers throughout the world, as a product that was safe and efficacious when it knew or should have known that the device was unproven, it was neither safe nor efficacious, the principles upon which it allegedly functioned were not supported by and were in contravention of medical knowledge and science, it was unreasonably dangerous and that it could and foreseeably would cause the type of injury and damage suffered by Mr. Gill Gill; and,

      c.     failed to warn dentists to whom it taught or caused to be taught the course that the device was unproven, it was neither safe nor efficacious, the principles upon which it allegedly functioned were not supported by and were in contravention of medical knowledge and science, it was unreasonably dangerous and that it could and foreseeably would cause the type of injury and damage suffered by Mr. Ri Gill edl.

66.    LVI acted with reckless disregard for the safety of others, including Mr. Gill.

67.    As a direct and proximate result of the negligence of LVI, and its reckless disregard for the safety of others including Mr. Gill, Mr. Gill has been substantially and permanently injured and damaged as outlined above.

**WHEREFORE**, plaintiff Karan Gill demands Judgment in an amount in excess of One Hundred Thousand Dollars ($100,000.00) against defendant LVI, plus interest and costs.

## COUNT III:

### Negligence Against Defendant OrthoMatrix And Defendant Galella

68.    Plaintiff Karan Gill reaffirms and realleges each of the above paragraphs of the Complaint as if specifically affirmed and alleged herein.

69.     OrthoMatrix was negligent in that, *inter alia,* it, either directly or by or through its division or trade name FBI and/or OrthoLogic, produced the treatment plan for Mr. Gill's dentist for the installation of an AGGA device, when it knew or should have known that the device was unproven, it was neither safe nor efficacious, the principles upon which it allegedly functioned were not supported by and were in contravention of medical knowledge and science, it was unreasonably dangerous and that it could and foreseeably would cause the type of injury and damage suffered by Mr. Gill.

70.     OrthoMatrix acted with reckless disregard for the safety of others, including Gill.

71.     Galella was negligent in that, *inter alia,* he produced the treatment plan for Mr. Gill's dentist for the installation of an AGGA device, when he knew or should have known that the device was unproven, it was neither safe nor efficacious, the principles upon which it allegedly functioned were not supported by and were in contravention of medical knowledge and science, it was unreasonably dangerous and that it could and foreseeably would cause the type of injury and damage suffered by Mr. Gill.

72.     Galella acted with reckless disregard for the safety of others, including Gill.

73.     As a direct and proximate result of the negligence of OrthoMatrix, and Galella and their reckless disregard for the safety of others including Mr. R Gill, Mr. Gill has been substantially and permanently injured and damaged as outlined above.

**WHEREFORE**, plaintiff Karan Gill demands Judgment in an amount of in excess of One Hundred Thousand Dollars ($100,000.00) against defendant Orthomatrix Corp., Inc. and defendant Galella, plus interest and costs.

## COUNT IV:

### Product Liability-Breach Of Warranties Against Defendant John's Dental

74.     Plaintiff Karan Gill reaffirms and realleges each of the above paragraphs of the Complaint as if specifically affirmed and alleged herein.

75.     At the time that the AGGA devices that were sold to Mr. Gill's dentist last left the possession, custody or control of John's Dental, the devices were inherently defective by virtue of its design, were not fit for their intended purpose nor for the specific purpose for which they were sold for installation in Mr. Gill's mouth, were not of merchantable quality, were not reasonably or minimally safe, and were unreasonably dangerous and defective, all at the time each left the possession, custody and control of John's Dental, for reasons that were described above.

76.     There is no alternative design of AGGA or any of its components that could have over-ridden scientific principles of physiology and anatomy such that it would perform the function or functions for which it was designed.

77.     When used for the purpose for which it was intended, AGGA presents a risk of serious and permanent injury when used as intended by the designer, manufacturer and seller.

78.     As a result of the foregoing, John's Dental was in breach of the implied warranties of merchantability and fitness for a particular purpose in regard to the aforesaid AGGA devices sold to Mr. Gill's dentist and installed in Mr. Gill's mouth.

79.     Mr. Gill relied on the aforementioned implied warranties in agreeing to the installation of the AGGA devices.

80.     As a direct and proximate result of those breaches of implied warranties, separately and together, Mr. Gill has been substantially and permanently injured and damaged as outlined above.

2828751.1

WHEREFORE, plaintiff Karan Gill demands Judgment in an amount of in excess of

One Hundred Thousand Dollars ($100,000.00) against defendant John's Dental Laboratory, Inc.,

plus interest and costs.

## COUNT V:

### Product Liability- Negligence Against Defendant John's Dental

81.     Plaintiff Karan Gill reaffirms and realleges each of the above paragraphs of the

Complaint as if specifically affirmed and alleged herein.

82.     At the time the AGGA devices were sold by to John's Dental to Mr. Gill's dentist,

John's Dental knew or should have known that the devices were not reasonably safe, were

negligently designed and in a condition not reasonably contemplated by Mr. Gill, the ultimate

user, including for the reasons that the function for which they were designed was not possible to

achieve and was in contravention of principles of physiology and anatomy, and carried

substantial risk of serious injury.

83.     At the time the AGGA devices were sold by John's Dental to Mr. Gill's dentist,

there was no alternative design available to achieve the design function of the products, as the

function of the products -mechanically causing more than a de minimis movement of the

maxilla- is not scientifically possible without jaw surgery.

84.     At the time the AGGA devices were sold by John's Dental to Mr. Gill's dentist,

the products posed a substantial likelihood of harm to Mr. Gill or any other user and were

unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary

consumer who purchases it with the ordinary knowledge common to consumers, including

because the product's tendency, rather than to move the maxilla, is to push the upper teeth

forward and out of their proper position within the alveolar bone, causing the teeth to flare out,

damaging the roots of the teeth and gums, and causing damage to and loss of alveolar bone that holds the teeth, all as happened to Mr. Gill as a result of the use of the product.

85.     No reasonable person who knew the risk of harm of using AGGA at the time of manufacture would conclude that the benefit of the product outweighed the risk to users.

86.     The negligent and defective design of the AGGA devices installed in Mr. Gill's mouth was the sole and/or substantial cause and/or factor in bringing about his injuries or damages.

**WHEREFORE**, plaintiff Karan Gill demands Judgment in an amount in excess of One Hundred Thousand Dollars ($100,000.00) against defendant John's Dental Laboratory, Inc., plus interest and costs.

## COUNT VI:

### Ontario Sale of Goods Act ("SGA") and
### Consumer Protection Act ("CPA") Against Defendant John's Dental)

87.     Plaintiff Karan Gill reaffirms and realleges each of the above paragraphs of the Complaint as if specifically affirmed and alleged herein.

88.     The Ontario Sale of Goods Act ("SGA") and The Ontario Consumer Protection Act ("CPA") make unlawful any deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in Canada.

89.     John's Dental has engaged in consumer-oriented conduct that is materially misleading, in that it has, in the course of marketing AGGA to consumers (including Canadian consumers) directly, and to dentists (including Canadian dentists) for the purpose of enticing consumers (including Canadian consumers) to use AGGA, represented falsely that:

    a.     AGGA is a device that mechanically causes the maxilla to move forward over time;

2828751.1

b.     that by touching and thereby stimulating a nerve in the upper palate, AGGA causes new bone to grow at the maxillary tuberosity (the most distal aspect of the upper jaw) and other places, which in turn causes the maxilla to move forward, effectively lengthening the upper jaw;

c.     that as the maxilla moves forward, upper teeth move with it;

d.     that by adhering bite plates to the lower molars, the lower jaw moves forward as the upper jaw moves forward;

e.     that the movement of the jaws has the effect of opening the airway, and moving the jaws into a position more natural for the user's face;

f.     is reasonably safe for installation into dental patients' mouths; and,

g.     can be utilized as a substitute for jaw surgery.

90.     These false representations are material in that they go to the essence of the function of AGGA as claimed by John's Dental, and their falsity means that the product is useless.

91.     AGGA is unreasonably dangerous as designed and manufactured, and can cause substantial and permanent damage, as set forth above.

92.     As a direct and proximate result of the aforementioned material misrepresentations, Mr. Gill allowed AGGA to be installed in his mouth, and as a result suffered serious and permanent injury as described above.

93.     This conduct of John's Dental has affected and will continue to affect not just Mr. Gill but also consumers at large within Canada who seek to reconfigure their jaws for a host of reasons including resolving issues of insufficient airway, severe dental crowding, disfigurement of chin or jawline or other reasons.

2828751.1

94.     This conduct of John's Dental has also affected and will continue to affect Canadian dentists who, based on those misrepresentations, will utilize AGGA on Canadian consumers and thereby visit substantial and permanent injury on such consumers who seek to reconfigure their jaws for a host of reasons including resolving issues of insufficient airway, severe dental crowding, disfigurement of chin or jawline or other reasons.

95.     John's Dental, through its material misrepresentations, has violated SGA and CPA, thereby causing Mr. Gill severe and permanent injury and damage as described above.

**WHEREFORE**, plaintiff Karan Gill demands Judgment in an amount in excess of One Hundred Thousand Dollars ($100,000.00) against defendant John's Dental Laboratory, Inc., plus treble damages, attorney's fees interest and costs.

## PLAINTIFF HYE YOON

96.     Prior to August 29, 2019, one or both of dentists Dr. Ariana Ebrahimian and/or Dr. Max Ebrahimian ("the Ebrahimian dentists") of Ebrahimian Integrative Dentistry in California took a course in the use, safety and efficacy of AGGA at the campus of LVI in Las Vegas, Nevada ("the course").

97.     On information and belief, one or both of the Ebrahimian dentists paid LVI for the course, and the course was approved by LVI and taught by an LVI-approved instructor.

98.     During the teaching of the course, the agent, servant or employee of LVI who taught it made various representations about the safety and efficacy of AGGA, which representations included those set forth above and which were unproven, not supported by medical knowledge or science, untested by any clinical trial, unsupported by peer-reviewed literature, and which were false and materially misleading.

2828751.1

99.    On information and belief, the course, which lasted approximately 2.5 days, largely or completely comprised the extent of the Ebrahimian dentists' training concerning AGGA and CAB.

100.    Prior to August 29, 2018, Ms. Yoon sought treatment from one or both of the Ebrahimian dentists for mainly breathing issues, teeth misalignment, and for some facial appearance improvement, and one or both of the Ebrahimian dentists prescribed treatment with an AGGA device for the purpose of opening her airway and alleviating her symptoms.

101.    At no time did LVI ever warn either of the Ebrahimian dentists or Ms. Yoon that AGGA was unproven, was not supported by scientific or medical knowledge, was not reasonably safe, was unreasonably dangerous, was not efficacious, and presented a risk of serious and permanent injury to consumers.

102.    Prior to August 29, 2019, one or both of the Ebrahimian dentists consulted with OrthoMatrix, through Dr. Galella and others, in regard to whether Ms. Yoon was an appropriate candidate for AGGA and CAB, and for the purpose of establishing an AGGA and CAB treatment plan.

103.    More specifically, prior to August 29, 2019, on information and belief, one or both of the Ebrahimian dentists submitted a questionnaire and dental records concerning Ms. Yoon to OrthoMatrix's Total Diagnostics internet portal, and thereafter and as a result, OrthoMatrix, through Dr. Galella and others, produced an AGGA/CAB treatment plan for Ms. Yoon ("the treatment plan") and otherwise represented to one or both of the Ebrahimian dentists and to Ms. Yoon that AGGA and CAB were appropriate treatments for Ms. Yoon.

104.    Prior to August 29, 2019, one or both of the Ebrahimian dentists, on information and belief in reliance on advice, instruction and guidance provided by OrthoMatrix, Dr. Galella,

and LVI, submitted information and/or specifications to John's Dental concerning Ms. Yoon and did place an order for an AGGA appliance to be manufactured by John's Dental for the specific use by Ms. Yoon.

105.   Prior to August 29, 2019, John's Dental did manufacture an AGGA appliance for use by one or both of the Ebrahimian dentists for installation in Ms. Yoon's mouth, did place it in the stream of commerce and did sell that appliance to one or both of the Ebrahimian dentists, who was then within the State of California; John's Dental knew at the time it was placed into the stream of commerce that it would be installed in a member of the public, and specifically that one or both of the Ebrahimian dentists would install it in Ms. Yoon.

106.   At the time of sale of the AGGA to one or both of the Ebrahimian dentists, John's Dental impliedly warranted and represented that the AGGA was fit, capable and suitable for the ordinary purposes for which it was intended, that it was fit for the specific purpose for which it was sold to one or both of the Ebrahimian dentists, that it had no design defects, that it was of merchantable quality, and that it was safe and not unreasonably dangerous.

107.   Ms. Yoon reasonably relied upon the implied warranties of John's Dental, as well as on its skill and judgment.

108.   Prior to the AGGA being placed into the stream of commerce and sold to one or both of the Ebrahimian dentists for use on Ms. Yoon, Dr. Galella did inspect and examine photographs of that AGGA device and of a mold of Ms. Yoon's teeth, and pronounced the AGGA fit to be used.

109.   At the time of the sale of the AGGA to one or both of the Ebrahimian dentists, the AGGA was inherently defective by virtue of its design, was not fit for its intended purpose nor for the specific purpose for which it was sold for installation in Ms. Yoon's mouth; it was not of

merchantable quality, was not reasonably safe, was unreasonably dangerous and defective, all at the time it left the possession, custody and control of John's Dental, for reasons that include but are not limited to:

     a.    AGGA as designed, manufactured and sold was not based on valid scientific principles, and in an adult does not change the nasomaxillary complex in three, or any, dimensions, does not stimulate new bone growth, does not move the maxilla forward horizontally by as much or more than 10 mm, does not open a user's airway, is in no way a substitute for jaw surgery;

     b.    there is no scientifically valid method of moving an adult maxilla forward more than a de minimis amount without jaw surgery, and there is no alternative design of AGGA or any of its components that could have over-ridden scientific principles of physiology and anatomy;

     c.    the design defect of the AGGA was not in any particular component part; but instead was that neither AGGA nor any appliance can possibly do what AGGA claims to have been designed to do;

     d.    that AGGA is unreasonably dangerous in that, rather than move the maxilla, it pushes the upper teeth forward and out of their proper position within the alveolar bone, causing the teeth to flare out, damaging the roots of the teeth and gums, and causing damage to and loss of alveolar bone that holds the teeth;

     e.    as AGGA creates substantial risk of harm, and no product can perform the function that it was designed to perform;

     f.    John's Dental failed to warn Ms. Yoon's dentist(s) or anyone else of the defects, deficiencies and dangers of AGGA as set forth in subparts a-e above; and,

2828751.1

g.    At the time that John's Dental manufactured, placed into the stream of commerce and sold to one or both of the Ebrahimian dentists the AGGA appliance for Ms. Yoon, that appliance was not reasonably safe, was not minimally safe for its expected purpose, and was dangerous to the extent beyond which would be contemplated by the ordinary dentist or consumer who purchases or uses it, with the ordinary knowledge common to such dentists or users.

110.    At all times relevant to the Complaint, had Ms. Yoon been warned of the defects and deficiencies of AGGA as described above, she would not have embarked on any course of treatment using AGGA.

111.    At all times relevant to the Complaint, had one of the Ebrahimian dentists been warned by any of the defendants of the defects and deficiencies of AGGA as described above then, on information and belief, Ms. Yoon's dentist(s) would not have embarked on any course of treatment of Ms. Yoon using AGGA.

112.    At all times relevant to the Complaint, Ms. Yoon would not by exercise of ordinary and reasonable care have discovered the defects and deficiencies of AGGA as described above nor perceived its danger.

113.    By October 2020, Ms. Yoon became aware that the AGGA device that had been installed in her was causing severe and permanent injury, and she had the device removed soon thereafter.

114.    At all times relevant to the Complaint,  Dr. Galella, LVI and OrthoMatrix, engaged in consumer-related conduct that was materially misleading in that: 1) each of them made material misrepresentations to dentists through the course and other courses, and through website marketing to both dentists and consumers, to the effect that AGGA was safe and efficacious and

2828751.1

was a reasonable and functionally effective alternative to jaw surgery that would create more than de minimis movement of the human maxilla; 2) such material misrepresentations were made with the knowledge and expectation that those dentists would advertise and otherwise offer AGGA as a safe and efficacious treatment alternative to consumers, including but not limited to consumers in the State of California including Ms. Yoon; and, 3) such material misrepresentations were made with the knowledge and expectation that members of the general public would ask dentists for AGGA and/or otherwise accept AGGA as a safe and efficacious treatment alternative to jaw surgery, consumers, including but not limited to consumers in the State of California including Ms. Yoon.

115.   As a result of the installation and use of the AGGA appliances, Ms. Yoon has been caused to suffer significant and permanent injury and damage, including but not limited to: teeth pushed out of alveolar bone causing mobility and sensitivity and pain, especially the upper frontal teeth, displaced teeth which do not align, bone loss, gum recession, pain; economic loss related to the cost of said worthless and harmful AGGA treatment; prolonged suffering from the condition for which she originally sought treatment as aforesaid as a result of being induced to avoid seeking proper treatment for it; and other injury and damage.

116.   Ms. Yoon at all times relevant to the Complaint acted reasonably, and nothing she did or failed to do caused or contributed to cause her injuries.

## COUNT VII:

### Product Liability-Negligence Against Defendant Dr. Galella

117.   Plaintiff Hye Yoon reaffirms and realleges each of the above paragraphs of the Complaint as if specifically affirmed and alleged herein.

118.   Defendant Dr. Galella was negligent in that, *inter alia,* he:

a.      Negligently designed the AGGA devices that were installed in Ms. Yoon, when he knew or should have known that AGGA devices were unproven, were neither safe nor efficacious, the principles upon which AGGA allegedly functioned were not supported by and were in contravention of medical knowledge and science, it was unreasonably dangerous and that it could and foreseeably would cause the type of injury and damage suffered by Ms. Yoon;

119.   Dr. Galella acted with reckless disregard for the safety of others, including Ms. Yoon.

120.   As a direct and proximate result of the negligence of Dr. Galella, and his reckless disregard for the safety of others including Ms. Yoon, Ms. Yoon has been substantially and permanently injured and damaged as outlined above.

**WHEREFORE**, plaintiff Hye Yoon demands Judgment in an amount in excess of One Hundred Thousand Dollars ($100,000.00) against defendant Dr. Steve Galella, D.D.S., plus interest and costs.

## COUNT VIII:

### Negligence Against Defendant LVI

121.   Plaintiff Hye Yoon reaffirms and realleges each of the above paragraphs of the Complaint as if specifically affirmed and alleged herein.

122.   Defendant LVI was negligent in that, *inter alia,* it:

a.      negligently taught or caused to be taught the course to Ms. Yoon's dentist, informing him and others that the AGGA device was safe and efficacious when it knew or should have known that the device was unproven, it was neither safe nor efficacious, the principles upon which it allegedly functioned were not supported by and were in contravention of medical knowledge and science, it was unreasonably dangerous and that

2828751.1

it could and foreseeably would cause the type of injury and damage suffered by Ms. Yoon;

b.      negligently marketed AGGA to Ms. Yoon and to dentists and consumers throughout the world, as a product that was safe and efficacious when it knew or should have known that the device was unproven, it was neither safe nor efficacious, the principles upon which it allegedly functioned were not supported by and were in contravention of medical knowledge and science, it was unreasonably dangerous and that it could and foreseeably would cause the type of injury and damage suffered by Ms. Yoon; and,

c.      failed to warn dentists to whom it taught or caused to be taught the course that the device was unproven, it was neither safe nor efficacious, the principles upon which it allegedly functioned were not supported by and were in contravention of medical knowledge and science, it was unreasonably dangerous and that it could and foreseeably would cause the type of injury and damage suffered by Ms. Yoon.

123.   LVI acted with reckless disregard for the safety of others, including Ms. Yoon.

124.   As a direct and proximate result of the negligence of LVI, and its reckless disregard for the safety of others including Ms. Yoon, Ms. Yoon has been substantially and permanently injured and damaged as outlined above.

**WHEREFORE**, plaintiff Hye Yoon demands Judgment in an amount in excess of One Hundred Thousand Dollars ($100,000.00) against defendant LVI, plus interest and costs.

## COUNT IX:

### Negligence Against Defendant OrthoMatrix And Defendant Galella

125.   Plaintiff Hye Yoon reaffirms and realleges each of the above paragraphs of the Complaint as if specifically affirmed and alleged herein.

126.   OrthoMatrix was negligent in that, *inter alia,* it, either directly or by or through its division or trade name FBI and/or OrthoLogic, produced the treatment plan for Ms. Yoon's dentist for the installation of an AGGA device, when it knew or should have known that the device was unproven, it was neither safe nor efficacious, the principles upon which it allegedly functioned were not supported by and were in contravention of medical knowledge and science, it was unreasonably dangerous and that it could and foreseeably would cause the type of injury and damage suffered by Ms. Yoon.

127.   OrthoMatrix acted with reckless disregard for the safety of others, including Yoon.

128.   Galella was negligent in that, *inter alia,* he produced the treatment plan for Ms. Yoon's dentist for the installation of an AGGA device, when he knew or should have known that the device was unproven, it was neither safe nor efficacious, the principles upon which it allegedly functioned were not supported by and were in contravention of medical knowledge and science, it was unreasonably dangerous and that it could and foreseeably would cause the type of injury and damage suffered by Ms. Yoon.

129.   Galella acted with reckless disregard for the safety of others, including Yoon.

130.   As a direct and proximate result of the negligence of OrthoMatrix, and Galella and their reckless disregard for the safety of others including Ms. Yoon, Ms. Yoon has been substantially and permanently injured and damaged as outlined above.

**WHEREFORE**, plaintiff Hye Yoon demands Judgment in an amount of in excess of One Hundred Thousand Dollars ($100,000.00) against defendant Orthomatrix Corp., Inc. and defendant Galella, plus interest and costs.

2828751.1

## COUNT X:

### Product Liability-Breach Of Warranties Against Defendant John's Dental

131.   Plaintiff Hye Yoon reaffirms and realleges each of the above paragraphs of the Complaint as if specifically affirmed and alleged herein.

132.   At the time that the AGGA devices that were sold to Ms. Yoon's dentist last left the possession, custody or control of John's Dental, the devices were inherently defective by virtue of its design, were not fit for their intended purpose nor for the specific purpose for which they were sold for installation in Mr. Yoon's mouth, were not of merchantable quality, were not reasonably or minimally safe, and were unreasonably dangerous and defective, all at the time each left the possession, custody and control of John's Dental, for reasons that were described above.

133.   There is no alternative design of AGGA or any of its components that could have over-ridden scientific principles of physiology and anatomy such that it would perform the function or functions for which it was designed.

134.   When used for the purpose for which it was intended, AGGA presents a risk of serious and permanent injury when used as intended by the designer, manufacturer and seller.

135.   As a result of the foregoing, John's Dental was in breach of the implied warranties of merchantability and fitness for a particular purpose in regard to the aforesaid AGGA devices sold to Ms. Yoon's dentist and installed in Ms. Yoon's mouth.

136.   Ms. Yoon relied on the aforementioned implied warranties in agreeing to the installation of the AGGA devices.

137.   As a direct and proximate result of those breaches of implied warranties, separately and together, Ms. Yoon has been substantially and permanently injured and damaged as outlined above.

2828751.1

**WHEREFORE**, plaintiff Hye Yoon demands Judgment in an amount of in excess of One Hundred Thousand Dollars ($100,000.00) against defendant John's Dental Laboratory, Inc., plus interest and costs.

## COUNT XI:

### Product Liability-Strict Liability Against Defendant John's Dental

138.   Plaintiff Hye Yoon reaffirms and realleges each of the above paragraphs of the complaint as if specifically affirmed and alleged herein.

139.   At the time the AGGA devices were sold by to John's Dental to Ms. Yoon's dentist, the devices were not reasonably safe, were defectively designed and in a condition not reasonably contemplated by Ms. Yoon, the ultimate user, including for the reasons that the function for which they were designed was not possible to achieve and was in contravention of principles of physiology and anatomy, and carried substantial risk of serious injury.

140.   At the time the AGGA devices were sold by John's Dental to Ms. Yoon's dentist, there was no alternative design available to achieve the design function of the products, as the function of the products -mechanically causing more than a de minimis movement of the maxilla- is not scientifically possible without jaw surgery.

141.   At the time the AGGA devices were sold by John's Dental to Ms. Yoon's dentist, the products posed a substantial likelihood of harm to Ms. Yoon or any other user and were unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it with the ordinary knowledge common to consumers, including because the product's tendency, rather than to move the maxilla, is to push the upper teeth forward and out of their proper position within the alveolar bone, causing the teeth to flare out,

2828751.1

damaging the roots of the teeth and gums, and causing damage to and loss of alveolar bone that holds the teeth, all as happened to Ms. Yoon as a result of the use of the product.

142.   No reasonable person who knew the risk of harm of using AGGA at the time of manufacture would conclude that the benefit of the product outweighed the risk to users.

143.   The defective design of the AGGA devices installed in Ms. Yoon's mouth was the sole and/or substantial cause and/or factor in bringing about her injuries or damages.

**WHEREFORE**, plaintiff Hye Yoon demands Judgment in an amount in excess of One Hundred Thousand Dollars ($100,000.00) against defendant John's Dental Laboratory, Inc., plus interest and costs.

## COUNT XII:

### Product Liability- Negligence Against Defendant John's Dental

144.   Plaintiff Hye Yoon reaffirms and realleges each of the above paragraphs of the Complaint as if specifically affirmed and alleged herein.

145.   At the time the AGGA devices were sold by to John's Dental to Ms. Yoon's dentist,  John's Dental knew or should have known that the devices were not reasonably safe, were negligently designed and in a condition not reasonably contemplated by Ms. Yoon, the ultimate user, including for the reasons that the function for which they were designed was not possible to achieve and was in contravention of principles of physiology and anatomy, and carried substantial risk of serious injury.

146.   At the time the AGGA devices were sold by John's Dental to Ms. Yoon's dentist, there was no alternative design available to achieve the design function of the products, as the function of the products -mechanically causing more than a de minimis movement of the maxilla- is not scientifically possible without jaw surgery.

2828751.1

147.   At the time the AGGA devices were sold by John's Dental to Ms. Yoon's dentist, the products posed a substantial likelihood of harm to Ms. Yoon or any other user and were unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it with the ordinary knowledge common to consumers, including because the product's tendency, rather than to move the maxilla, is to push the upper teeth forward and out of their proper position within the alveolar bone, causing the teeth to flare out, damaging the roots of the teeth and gums, and causing damage to and loss of alveolar bone that holds the teeth, all as happened to Ms. Yoon as a result of the use of the product.

148.   No reasonable person who knew the risk of harm of using AGGA at the time of manufacture would conclude that the benefit of the product outweighed the risk to users.

149.   The negligent and defective design of the AGGA devices installed in Ms. Yoon's mouth was the sole and/or substantial cause and/or factor in bringing about her injuries or damages.

**WHEREFORE**, plaintiff Hye Yoon demands Judgment in an amount in excess of One Hundred Thousand Dollars ($100,000.00) against defendant John's Dental Laboratory, Inc., plus interest and costs.

## COUNT XIII:

### California Consumer Protection Act Against Defendant John's Dental)

150.   Plaintiff Hye Yoon reaffirms and realleges each of the above paragraphs of the Complaint as if specifically affirmed and alleged herein.

151.   California Consumer Legal Remedies Act ("CLRA"), California Civil Code Section 1750 et seq., makes unlawful any deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in California.

2828751.1

152.    John's Dental has engaged in consumer-oriented conduct that is materially misleading, in that it has, in the course of marketing AGGA to consumers (including North Carolina consumers) directly, and to dentists (including California dentists) for the purpose of enticing consumers (including California consumers) to use AGGA, represented falsely that:

    a.    AGGA is a device that mechanically causes the maxilla to move forward over time;

    b.    that by touching and thereby stimulating a nerve in the upper palate, AGGA causes new bone to grow at the maxillary tuberosity (the most distal aspect of the upper jaw) and other places, which in turn causes the maxilla to move forward, effectively lengthening the upper jaw;

    c.    that as the maxilla moves forward, upper teeth move with it;

    d.    that by adhering bite plates to the lower molars, the lower jaw moves forward as the upper jaw moves forward;

    e.    that the movement of the jaws has the effect of opening the airway, and moving the jaws into a position more natural for the user's face;

    f.    is reasonably safe for installation into dental patients' mouths; and,

    g.    can be utilized as a substitute for jaw surgery.

153.    These false representations are material in that they go to the essence of the function of AGGA as claimed by John's Dental, and their falsity means that the product is useless.

154.    AGGA is unreasonably dangerous as designed and manufactured, and can cause substantial and permanent damage, as set forth above.

155.   As a direct and proximate result of the aforementioned material misrepresentations, Ms. Yoon allowed AGGA to be installed in her mouth, and as a result suffered serious and permanent injury as described above.

156.   This conduct of John's Dental has affected and will continue to affect not just Ms. Yoon but also consumers at large within California who seek to reconfigure their jaws for a host of reasons including resolving issues of insufficient airway, severe dental crowding, disfigurement of chin or jawline or other reasons.

157.   This conduct of John's Dental has also affected and will continue to affect California dentists who, based on those misrepresentations, will utilize AGGA on California consumers and thereby visit substantial and permanent injury on such consumers who seek to reconfigure their jaws for a host of reasons including resolving issues of insufficient airway, severe dental crowding, disfigurement of chin or jawline or other reasons.

158.   John's Dental, through its material misrepresentations, has violated CLRA, thereby causing Ms. Yoon severe and permanent injury and damage as described above.

**WHEREFORE**, plaintiff Hye Yoon demands Judgment in an amount in excess of One Hundred Thousand Dollars ($100,000.00) against defendant John's Dental Laboratory, Inc., plus treble damages, attorney's fees interest and costs.

## PLAINTIFF CRYSTAL NASSOURI

159.   Prior to Spring 2018, dentist Dr. Jeffrey S. Haddad ("Dr. Haddad") of Michigan, took a course in the use, safety and efficacy of AGGA through FBI, which course ("FBI course") was taught by defendant Galella, as well as a similar course on the campus of LVI in Las Vegas, Nevada ("the LVI course").

160.   On information and belief, Dr. Haddad paid LVI for the LVI course, and the course was approved by LVI and taught by an LVI-approved instructor.

161.   On information and belief, Dr. Haddad paid FBI for the FBI course.

162.   During the teaching of the LVI course, the agent, servant or employee of LVI who taught it made various representations about the safety and efficacy of AGGA.

163.   During the teaching of the FBI course, Galella made various representations about the safety and efficacy of AGGA.

164.   Defendant Galella, individually and as an agent, servant or employee of FBI, and the agent, servant or employee of LVI who taught the LVI course, during the teaching of the FBI course and the LVI course respectively, made various representations about the safety and efficacy of AGGA, which representations included those set forth above and which were unproven, not supported by medical knowledge or science, untested by any clinical trial, unsupported by peer-reviewed literature, and which were false and materially misleading.

165.   On information and belief, the FBI course and/or the LVI course largely or completely comprised the extent of Dr. Haddad's training concerning AGGA and CAB.

166.   Prior to Spring 2018, Ms. Nassouri sought treatment from Dr. Haddad for a condition which, inter alia, was described as obstructive sleep apnea ("OSA") and also to improve her facial appearance, and Dr. Haddad prescribed treatment with an AGGA device for the purpose of moving her jaw and alleviating her symptoms without surgery.

167.   At no time did FBI or Galella or LVI ever warn Dr. Haddad or Ms. Nassouri that AGGA was unproven, was not supported by scientific or medical knowledge, was not reasonably safe, was unreasonably dangerous, was not efficacious, and presented a risk of serious and permanent injury to consumers.

168.   Prior to Spring 2018, Dr. Haddad consulted with OrthoMatrix, through Dr. Galella and others, in regard to whether Ms. Nassouri was an appropriate candidate for AGGA and CAB, and for the purpose of establishing an AGGA and CAB treatment plan.

169.   More specifically, prior to Spring 2018, on information and belief, Dr. Haddad submitted a questionnaire and dental records concerning Ms. Nassouri to OrthoMatrix's Total Diagnostics internet portal, and thereafter and as a result, OrthoMatrix, through Dr. Galella and others, produced an AGGA/CAB treatment plan for Ms. Nassouri ("the treatment plan") and otherwise represented to Dr. Haddad and to Ms. Nassouri that AGGA and CAB were appropriate treatments for Ms. Nassouri.

170.   Prior to Spring 2018, Dr. Haddad, on information and belief in reliance on advice, instruction and guidance provided by OrthoMatrix and Dr. Galella, submitted information and/or specifications to John's Dental concerning Ms. Nassouri and did place an order for an AGGA appliance to be manufactured by John's Dental for the specific use by Ms. Nassouri. .

171.   Prior to Spring 2018, John's Dental did manufacture an AGGA appliance for use by Dr. Haddad for installation in Ms. Nassouri's  mouth, did place it in the stream of commerce and did sell that appliance to Dr. Haddad, who was then within the State of Michigan; John's Dental knew at the time it was placed into the stream of commerce that it would be installed in a member of the public, and specifically that Dr. Haddad would install it in Ms. Nassouri.

172.   At the time of sale of the AGGA to Dr. Haddad, John's Dental impliedly warranted and represented that the AGGA was fit, capable and suitable for the ordinary purposes for which it was intended, that it was fit for the specific purpose for which it was sold to Dr. Haddad, that it had no design defects, that it was of merchantable quality, and that it was safe and not unreasonably dangerous.

173.   Ms. Nassouri reasonably relied upon the implied warranties of John's Dental, as well as on its skill and judgment.

174.   Prior to the AGGA being placed into the stream of commerce and sold to Dr. Haddad for use on Ms. Nassouri, Dr. Galella did inspect and examine photographs of that AGGA device and of a mold of Ms. Nassouri, and pronounced the AGGA fit to be used.

175.   At the time of the sale of the AGGA to Dr. Haddad, the AGGA was inherently defective by virtue of its design, was not fit for its intended purpose nor for the specific purpose for which it was sold for installation in Ms. Nasspouri's mouth; it was not of merchantable quality, was not reasonably safe, was unreasonably dangerous and defective, all at the time it left the possession, custody and control of John's Dental, for reasons that include but are not limited to:

      a.     AGGA as designed, manufactured and sold was not based on valid scientific principles, and in an adult does not change the nasomaxillary complex in three, or any, dimensions, does not stimulate new bone growth, does not move the maxilla forward horizontally by as much or more than 10 mm, does not open a user's airway, is in no way a substitute for jaw surgery;

      b.     there is no scientifically valid method of moving an adult maxilla forward more than a de minimis amount without jaw surgery, and there is no alternative design of AGGA or any of its components that could have over-ridden scientific principles of physiology and anatomy;

      c.     the design defect of the AGGA was not in any particular component part; but instead was that neither AGGA nor any appliance can possibly do what AGGA claims to have been designed to do;

d.      that AGGA is unreasonably dangerous in that, rather than move the maxilla, it pushes the upper teeth forward and out of their proper position within the alveolar bone, causing the teeth to flare out, damaging the roots of the teeth and gums, and causing damage to and loss of alveolar bone that holds the teeth;

e.      as AGGA creates substantial risk of harm, and no product can perform the function that it was designed to perform;

f.      John's Dental failed to warn Ms. Nassouri's dentist or anyone else of the defects, deficiencies and dangers of AGGA as set forth in subparts a-e above; and,

g.      At the time that John's Dental manufactured, placed into the stream of commerce and sold to Dr. Haddad the AGGA appliance for Ms. Nassouri, that appliance was not reasonably safe, was not minimally safe for its expected purpose, and was dangerous to the extent beyond which would be contemplated by the ordinary dentist or consumer who purchases or uses it, with the ordinary knowledge common to such dentists or users.

176.   At all times relevant to the Complaint, had Ms. Nassouri been warned of the defects and deficiencies of AGGA as described above, he would not have embarked on any course of treatment using AGGA.

177.   At all times relevant to the Complaint, had Dr. Haddad been warned by any of the defendants of the defects and deficiencies of AGGA as described above then, on information and belief, he would not have embarked on any course of treatment of Ms. Nassouri using AGGA.

178.   At all times relevant to the Complaint, Ms. Nassouri would not by exercise of ordinary and reasonable care have discovered the defects and deficiencies of AGGA as described above nor perceived its danger.

2828751.1

179.    By the Spring of 2021, Ms. Nasouri had become aware that the AGGA device that had been installed in her was causing severe and permanent injury, and she had the device removed soon thereafter.

180.    At all times relevant to the Complaint, Dr. Galella and OrthoMatrix, and LVI, engaged in consumer-related conduct that was materially misleading in that: 1) each of them made material misrepresentations to dentists through the course and other courses, and through website marketing to both dentists and consumers, to the effect that AGGA was safe and efficacious and was a reasonable and functionally effective alternative to jaw surgery that would create more than de minimis movement of the human maxilla; 2) such material misrepresentations were made with the knowledge and expectation that those dentists would advertise and otherwise offer AGGA as a safe and efficacious treatment alternative to consumers, including but not limited to consumers in the State of Michigan including Ms. Nassouri; and, 3) such material misrepresentations were made with the knowledge and expectation that members of the general public would ask dentists for AGGA and/or otherwise accept AGGA as a safe and efficacious treatment alternative to jaw surgery, consumers, including but not limited to consumers in the State of Michigan including Ms. Nassouri.

181.    As a result of the installation and use of the AGGA appliances, Ms. Nassouri has been caused to suffer significant and permanent injury and damage, including but not limited to: nasal airway deviation creating difficulty breathing, root reabsorption, loose teeth, molars pushed backwards and flared outward, premature aging with face appearing longer and recessed and jaw resting further posteriorly, jaw muscle pain, open bite on the left side that can't close, pain; economic loss related to the cost of said worthless and harmful AGGA treatment; prolonged suffering from the conditions for which he originally sought treatment from Dr. Haddad as a

2828751.1

result of being induced to avoid seeking proper treatment for it; and other injury and damage. Ms. Nassouri at all times relevant to the Complaint acted reasonably, and nothing she did or failed to do caused or contributed to cause her injuries.

## COUNT XIV:

### Product Liability-Negligence Against Defendant Dr. Galella

182. Plaintiff Crystal Nassouri reaffirms and realleges each of the above paragraphs of the Complaint as if specifically affirmed and alleged herein.

183. Defendant Dr. Galella was negligent in that, *inter alia,* he:

a. Negligently designed the AGGA devices that were installed in Ms. Nassouri, when he knew or should have known that AGGA devices were unproven, were neither safe nor efficacious, the principles upon which AGGA allegedly functioned were not supported by and were in contravention of medical knowledge and science, it was unreasonably dangerous and that it could and foreseeably would cause the type of injury and damage suffered by Ms. Nassouri;

184. Dr. Galella acted with reckless disregard for the safety of others, including Ms. Nassouri.

185. As a direct and proximate result of the negligence of Dr. Galella, and his reckless disregard for the safety of others including Ms. Nassouri, Ms. Nassouri has been substantially and permanently injured and damaged as outlined above.

**WHEREFORE**, plaintiff Crystal Nassouri demands Judgment in an amount in excess of One Hundred Thousand Dollars ($100,000.00) against defendant Dr. Steve Galella, D.D.S., plus interest and costs.

2828751.1

## COUNT XV:

### Negligence Against Defendant LVI

186.   Plaintiff Crystal Nassouri reaffirms and realleges each of the above paragraphs of the Complaint as if specifically affirmed and alleged herein.

187.   Defendant LVI was negligent in that, *inter alia,* it:

  a. negligently taught or caused to be taught the course to Ms. Nassouri's dentist, informing him and others that the AGGA device was safe and efficacious when it knew or should have known that the device was unproven, it was neither safe nor efficacious, the principles upon which it allegedly functioned were not supported by and were in contravention of medical knowledge and science, it was unreasonably dangerous and that it could and foreseeably would cause the type of injury and damage suffered by Ms. Nassouri;

  b. negligently marketed AGGA to Ms. Nassouri and to dentists and consumers throughout the world, as a product that was safe and efficacious when it knew or should have known that the device was unproven, it was neither safe nor efficacious, the principles upon which it allegedly functioned were not supported by and were in contravention of medical knowledge and science, it was unreasonably dangerous and that it could and foreseeably would cause the type of injury and damage suffered by Ms. Nassouri; and,

  c. failed to warn dentists to whom it taught or caused to be taught the course that the device was unproven, it was neither safe nor efficacious, the principles upon which it allegedly functioned were not supported by and were in contravention of medical knowledge and science, it was unreasonably dangerous and that it could and foreseeably would cause the type of injury and damage suffered by Ms. Nassouri.

2828751.1

188.   LVI acted with reckless disregard for the safety of others, including Ms. Nassouri.

189.   As a direct and proximate result of the negligence of LVI, and its reckless disregard for the safety of others including Ms. Nassouri, Ms. Nassouri has been substantially and permanently injured and damaged as outlined above.

**WHEREFORE**, plaintiff Crystal Nassouri demands Judgment in an amount in excess of One Hundred Thousand Dollars ($100,000.00) against defendant LVI, plus interest and costs.

<u>COUNT XVI:</u>

<u>Negligence Against Defendant OrthoMatrix And Defendant Galella</u>

190.   Plaintiff Crystal Nassouri reaffirms and realleges each of the above paragraphs of the Complaint as if specifically affirmed and alleged herein.

191.   OrthoMatrix was negligent in that, *inter alia,* it, either directly or by or through its division or trade name FBI and/or OrthoLogic, produced the treatment plan for Ms. Nassouri's dentist for the installation of an AGGA device, when it knew or should have known that the device was unproven, it was neither safe nor efficacious, the principles upon which it allegedly functioned were not supported by and were in contravention of medical knowledge and science, it was unreasonably dangerous and that it could and foreseeably would cause the type of injury and damage suffered by Ms. Nassouri.

192.   OrthoMatrix acted with reckless disregard for the safety of others, including Nassouri.

193.   Galella was negligent in that, *inter alia,* he produced the treatment plan for Ms. Nassouri's dentist for the installation of an AGGA device, when he knew or should have known that the device was unproven, it was neither safe nor efficacious, the principles upon which it allegedly functioned were not supported by and were in contravention of medical knowledge and

2828751.1

science, it was unreasonably dangerous and that it could and foreseeably would cause the type of injury and damage suffered by Ms. Nassouri.

194.   Galella acted with reckless disregard for the safety of others, including Nassouri.

195.   As a direct and proximate result of the negligence of OrthoMatrix, and Galella and their reckless disregard for the safety of others including Ms. Nassouri, Ms. Nassouri has been substantially and permanently injured and damaged as outlined above.

**WHEREFORE**, plaintiff Crystal Nassouri demands Judgment in an amount of in excess of One Hundred Thousand Dollars ($100,000.00) against defendant Orthomatrix Corp., Inc. and defendant Galella, plus interest and costs.

## COUNT XVII:

### Product Liability-Breach Of Warranties Against Defendant John's Dental

196.   Plaintiff Crystal Nassouri reaffirms and realleges each of the above paragraphs of the Complaint as if specifically affirmed and alleged herein.

197.   At the time that the AGGA devices that were sold to Ms. Nassouri's dentist last left the possession, custody or control of John's Dental, the devices were inherently defective by virtue of its design, were not fit for their intended purpose nor for the specific purpose for which they were sold for installation in Mr. Nassouri's mouth, were not of merchantable quality, were not reasonably or minimally safe, and were unreasonably dangerous and defective, all at the time each left the possession, custody and control of John's Dental, for reasons that were described above.

198.   There is no alternative design of AGGA or any of its components that could have over-ridden scientific principles of physiology and anatomy such that it would perform the function or functions for which it was designed.

199.   When used for the purpose for which it was intended, AGGA presents a risk of serious and permanent injury when used as intended by the designer, manufacturer and seller.

200.   As a result of the foregoing, John's Dental was in breach of the implied warranties of merchantability and fitness for a particular purpose in regard to the aforesaid AGGA devices sold to Ms. Nassouri's dentist and installed in Ms. Nassouri's mouth.

201.   Ms. Nassouri relied on the aforementioned implied warranties in agreeing to the installation of the AGGA devices.

202.   As a direct and proximate result of those breaches of implied warranties, separately and together, Ms. Nassouri has been substantially and permanently injured and damaged as outlined above.

**WHEREFORE**, plaintiff Crystal Nassour demands Judgment in an amount of in excess of One Hundred Thousand Dollars ($100,000.00) against defendant John's Dental Laboratory, Inc., plus interest and costs.

## COUNT XVIII:

### Product Liability-Strict Liability Against Defendant John's Dental

203.   Plaintiff Crystal Nassouri reaffirms and realleges each of the above paragraphs of the complaint as if specifically affirmed and alleged herein.

204.   At the time the AGGA devices were sold by to John's Dental to Ms. Nassouri's dentist, the devices were not reasonably safe, were defectively designed and in a condition not reasonably contemplated by Ms. Nassouri, the ultimate user, including for the reasons that the function for which they were designed was not possible to achieve and was in contravention of principles of physiology and anatomy, and carried substantial risk of serious injury.

2828751.1

205.   At the time the AGGA devices were sold by John's Dental to Ms. Nassouri's dentist, there was no alternative design available to achieve the design function of the products, as the function of the products -mechanically causing more than a de minimis movement of the maxilla- is not scientifically possible without jaw surgery.

206.   At the time the AGGA devices were sold by John's Dental to Ms. Nassouri's dentist,  the products posed a substantial likelihood of harm to Ms. Nassouri or any other user and were unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it with the ordinary knowledge common to consumers, including because the product's tendency, rather than to move the maxilla, is to push the upper teeth forward and out of their proper position within the alveolar bone, causing the teeth to flare out, damaging the roots of the teeth and gums, and causing damage to and loss of alveolar bone that holds the teeth, all as happened to Ms. Nassouri as a result of the use of the product.

207.   No reasonable person who knew the risk of harm of using AGGA at the time of manufacture would conclude that the benefit of the product outweighed the risk to users.

208.   The defective design of the AGGA devices installed in Ms. Nassouri's mouth was the sole and/or substantial cause and/or factor in bringing about her injuries or damages.

**WHEREFORE**, plaintiff Crystal Nassouri demands Judgment in an amount in excess of One Hundred Thousand Dollars ($100,000.00) against defendant John's Dental Laboratory, Inc., plus interest and costs.

## COUNT XIX:

### Product Liability- Negligence Against Defendant John's Dental

209.   Plaintiff Crystal Nassouri reaffirms and realleges each of the above paragraphs of the Complaint as if specifically affirmed and alleged herein.

2828751.1

210.  At the time the AGGA devices were sold by to John's Dental to Ms. Nassouri's dentist, John's Dental knew or should have known that the devices were not reasonably safe, were negligently designed and in a condition not reasonably contemplated by Ms. Nassouri, the ultimate user, including for the reasons that the function for which they were designed was not possible to achieve and was in contravention of principles of physiology and anatomy, and carried substantial risk of serious injury.

211.  At the time the AGGA devices were sold by John's Dental to Ms. Nassouri's dentist, there was no alternative design available to achieve the design function of the products, as the function of the products -mechanically causing more than a de minimis movement of the maxilla- is not scientifically possible without jaw surgery.

212.  At the time the AGGA devices were sold by John's Dental to Ms. Nassouri's dentist,  the products posed a substantial likelihood of harm to Ms. Nassouri or any other user and were unreasonably dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it with the ordinary knowledge common to consumers, including because the product's tendency, rather than to move the maxilla, is to push the upper teeth forward and out of their proper position within the alveolar bone, causing the teeth to flare out, damaging the roots of the teeth and gums, and causing damage to and loss of alveolar bone that holds the teeth, all as happened to Ms. Nassouri as a result of the use of the product.

213.  No reasonable person who knew the risk of harm of using AGGA at the time of manufacture would conclude that the benefit of the product outweighed the risk to users.

214.  The negligent and defective design of the AGGA devices installed in Ms. Nassouri's mouth was the sole and/or substantial cause and/or factor in bringing about her injuries or damages.

2828751.1

**WHEREFORE**, plaintiff Crystal Nassouri demands Judgment in an amount in excess of One Hundred Thousand Dollars ($100,000.00) against defendant John's Dental Laboratory, Inc., plus interest and costs.

**COUNT XX:**

**The Consumer Protection Act ("CPA") (1976 PA 331) Against Defendant John's Dental)**

215.   Plaintiff Crystal Nassouri reaffirms and realleges each of the above paragraphs of the Complaint as if specifically affirmed and alleged herein.

216.   The Consumer Protection Act ("CPA") (1976 PA 331) make unlawful any deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in Michigan.

217.   John's Dental has engaged in consumer-oriented conduct that is materially misleading, in that it has, in the course of marketing AGGA to consumers (including Michigan consumers) directly, and to dentists (including Michigan dentists) for the purpose of enticing consumers (including Michigan consumers) to use AGGA, represented falsely that:

    a.    AGGA is a device that mechanically causes the maxilla to move forward over time;

    b.    that by touching and thereby stimulating a nerve in the upper palate, AGGA causes new bone to grow at the maxillary tuberosity (the most distal aspect of the upper jaw) and other places, which in turn causes the maxilla to move forward, effectively lengthening the upper jaw;

    c.    that as the maxilla moves forward, upper teeth move with it;

    d.    that by adhering bite plates to the lower molars, the lower jaw moves forward as the upper jaw moves forward;

2828751.1

     e.     that the movement of the jaws has the effect of opening the airway, and moving the jaws into a position more natural for the user's face;

     f.     is reasonably safe for installation into dental patients' mouths; and,

     g.     can be utilized as a substitute for jaw surgery.

218.   These false representations are material in that they go to the essence of the function of AGGA as claimed by John's Dental, and their falsity means that the product is useless.

219.   AGGA is unreasonably dangerous as designed and manufactured, and can cause substantial and permanent damage, as set forth above.

220.   As a direct and proximate result of the aforementioned material misrepresentations, Ms. Nassouri allowed AGGA to be installed in her mouth, and as a result suffered serious and permanent injury as described above.

221.   The conduct of John's Dental has affected and will continue to affect not just Ms. Nassouri but also consumers at large within Michigan who seek to reconfigure their jaws for a host of reasons including resolving issues of insufficient airway, severe dental crowding, disfigurement of chin or jawline or other reasons.

222.   This conduct of John's Dental has also affected and will continue to affect Michigan dentists who, based on those misrepresentations, will utilize AGGA on Michigan consumers and thereby visit substantial and permanent injury on such consumers who seek to reconfigure their jaws for a host of reasons including resolving issues of insufficient airway, severe dental crowding, disfigurement of chin or jawline or other reasons.

223.    John's Dental, through its material misrepresentations, has violated SGA and CPA, thereby causing Ms. Nassouri severe and permanent injury and damage as described above.

**WHEREFORE,** plaintiff Crystal Nassouri demands Judgment in an amount in excess of One Hundred Thousand Dollars ($100,000.00) against defendant John's Dental Laboratory, Inc., plus treble damages, attorney's fees interest and costs.

### JURY TRIAL DEMAND

Plaintiffs hereby demand a trial by jury on all Counts so triable.

**WHEREFORE,** Plaintiffs pray for judgment against Defendants, jointly and severally, as follows:

1.    For compensatory damages in excess of $100,000.00;

2.    For punitive damages in an amount to be proven at trial;

3.    For attorney's fees and costs of suit incurred herein;

4.    For pre-judgment and post-judgment interest as allowed by law; and

5.    For such other and further relief as is appropriate under the circumstances.

Respectfully submitted,

s/Alan C. Milstein
**Alan C. Milstein, Esquire**
**SHERMAN, SILVERSTEIN, KOHL,**
 **ROSE & PODOLSKY, P.A.**
**308 Harper Drive, Suite 200**
**Moorestown, NJ 08057**
**Telephone: 856-662-0700**
**Facsimile: 856-488-4744**
**Email: amilstein@shermansilverstein.com**

**Scott Charnas, Esquire (Admission Pending)**
**CHARNAS LAW FIRM, P.C.**
 **455 East 51st Street**

2828751.1

New York, NY 10022
Tel: 212-980-6800
Email: scharnas@charnaslawfirm.com
*Attorneys for Plaintiffs*

Dated:       <u>September 8, 2021</u>

2828751.1